570 A.2d 369

**Diane L. JOHNSON**

v.

**E. John DOMINGUES.**

**No. 966, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

March 5, 1990.

Certiorari Granted April 11, 1990.

Stephen E. Moss (Scott M. Strickler, on the brief), Bethesda, for appellant.

Sandra W. Barron, Rockville, for appellee.

Argued before MOYLAN, ROBERT M. BELL and CATHELL, JJ.

CATHELL, Judge.

Diane Johnson, the appellant and former spouse of the appellee, John Domingues, appeals from an order of the Circuit Court for Montgomery County which granted sole custody of the parties' two minor children to the appellee. As one of the many questions raised by appellant is dispositive, we need not list or address the remaining issues raised. The question addressed is:

> Did the Chancellor err in terminating the appellant's physical custody of the minor children and awarding sole custody to the appellee?

Diane Johnson and John Domingues were married on June 25, 1982. Two children were born of the marriage, Kathryn Lynn on December 8, 1982, and Matthew John on February 5, 1984. On January 5, 1985, the parties separated. They entered into a separation agreement on May 14, 1985, in which they agreed to resolve the issue of custody of the children as follows:

> The parties agree that they shall have joint custody of their minor children, with the children to reside with [Ms. Johnson]. [Mr. Domingues] shall be allowed liberal visitation with the children, as reasonably agreed to between the parties . . . .

On November 5, 1986, the parties entered into an addendum to the separation agreement, which provided Mr. Domingues with specific overnight visitation every Tuesday and every other weekend. The parties were divorced absolutely on December 23, 1986. The separation agreement and addendum were incorporated, but not merged, into the divorce decree.

On February 26, 1988, Ms. Johnson married Theodore Bowles, Jr., M.D., a physician in the United States Army. In March of 1988, Bowles learned that the Army was transferring him to San Antonio, Texas. Naturally, the relocation of the children to Texas along with Bowles and Ms. Johnson would, to say the least, affect Mr. Domingues' visitation schedule.

Ms. Johnson claimed that she attempted to discuss the matter with Mr. Domingues, but he refused to talk to her. Mr. Domingues, on the other hand, denied Ms. Johnson's claim. In any event, the parties ended up before the circuit court on Ms. Johnson's petition for modification of Mr. Domingues' visitation schedule, and Mr. Domingues' counter-complaint in which he sought sole custody of the minor children.

The case was set for hearing before a Master for Domestic Relations Causes. After a five-day hearing which produced approximately 1300 pages of transcript, the Master recommended that sole custody of the children be awarded to Mr. Domingues, with extensive rights of visitation reserved to Ms. Johnson. Exceptions were filed and denied at a hearing at which no further testimony was taken.

The Master, in the proceeding below, filed a written report entitled "Report and Recommendations of the Domestic Relations Master." The report summarized what the Master viewed as pertinent portions of the testimony,

followed by the Master's findings of fact, conclusions and opinion under appropriate sub-headings. The facts as found by the Master were as follows:

1. There has been a significant change of circumstance since the Judgment of Absolute Divorce was filed on December 23, 1986. At that time and until the summer of 1988, both parties lived in Montgomery County. [Ms. Johnson] has now moved to San Antonio, Texas.

2. [Ms. Johnson's] husband interferes with the relationship between the minor children and [Mr. Domingues].

3. [Ms. Johnson] does nothing to further the relationship between [Mr. Domingues] and the parties' children.

4. [Ms. Johnson] and her husband are making every effort to establish their family to the exclusion of [Mr. Domingues].

5. [Ms. Johnson] has refused to communicate with [Mr. Domingues] even when such communication is reasonably necessary to protect the children's well-being, for example, in regard to her remarriage.

6. Any change in economic circumstances has been due to voluntary decisions on [Ms. Johnson's] part.

7. There has been no significant increase in [Ms. Johnson's] expenses for the children except insofar as she has attributed costs of housing, furniture, swimming pool and her husband's car to the children.[1]

The Master then made the following conclusion:

In this case, the plaintiff's move from Montgomery County, Maryland, the domicile of both parties at the time of the divorce and throughout the period after that until July, 1988, as well as the children's home from birth, is a substantial change of circumstances in determining whether modification from joint custody with the plaintiff having residential custody to a change in legal and/or physical custody should be determined.

---

1. We note that many of the Master's findings of fact are second level findings of fact and therefore not entitled to deference.

The Master continued further with a series of conclusory statements which illustrated how the parties simply failed to communicate, resulting in the creation of problems between themselves. The Master mainly attributed this communication breakdown to Ms. Johnson's conduct. Notably absent from this series of conclusions was a statement that such problems constituted a change in conditions *which affected the welfare of the children.*[2]

The Chancellor heard Ms. Johnson's exceptions to the Master's Report, and issued his decision in a written Memorandum Opinion and Order. The Memorandum Opinion and Order, after reciting some of the conclusions reached by the Master, contained the following:

> Having considered all of the testimony at the hearings, the Master concluded that a continuation of the present joint custodial arrangement is *impractical,* due primarily to the actions of Plaintiff and her husband. Having so found, and weighing the respective advantages and disadvantages of placing sole custody with Plaintiff or Defendant, she concluded that the best interests of the children would better be served by the granting of sole custody to their father, with liberal visitation provided the Plaintiff. These conclusions by the Master are well supported by the evidence.
>
> *In making her determinations the Master properly concluded that the proposed change in custody is justified by either the "best interests of the children" test or the "change in circumstances" test. The appropriate test for such a modification is a combination of both.* [emphasis added]

### The Standard For a Change of Custody

We restated the standard to be met in order to justify a chancellor's grant of a *change* in custody in *Levitt v. Levitt,*

---

**2.** Evidence of any effect upon the children is also notably absent from the record before us.

79 Md.App. 394, 556 A.2d 1162, *cert. denied,* 316 Md. 549, 560 A.2d 1118 (1989). Quoting *Sartoph v. Sartoph,* 31 Md.App. 58, 66–67, 354 A.2d 467, *cert. denied,* 278 Md. 732 (1976), we said:

> "The custody of children should not be disturbed unless there is some strong reason affecting the welfare of the child. To justify a change in custody, *a change in conditions must have occurred which affects the welfare of the child and not of the parents.* The reason for this rule is that the stability provided by the continuation of a successful relationship with a parent who has been in day to day contact with a child generally far outweighs any alleged advantage which might accrue to the child as a result of a custodial change. In short, when all goes well with children, stability, not change, is in their best interests."

*Levitt,* 79 Md.App. at 397–98, 556 A.2d 1162 (emphasis in original, footnotes omitted).

We went on to state in *Levitt,* quoting *Jordan v. Jordan,* 50 Md.App. 437, 443, 439 A.2d 26, *cert. denied,* 293 Md. 332 (1982), that:

> "The burden is on the appellant, who affirmatively seeks action by the chancellor in changing the custody of the minor child, to show why the court should take that action, and, if he fails to meet that burden, the action should not be taken. (citation omitted)"

*Levitt,* 79 Md.App. at 398, 556 A.2d 1162.

We stated in *Levitt,* which also involved the modification of a joint custody arrangement, that the "best interest of the child" standard as it applied in an original grant of custody, *is not* applied in the same way in respect to modification of custody. In essence, we stated that the best interest of the child is presumed to be a continuation of custody unless factors exist which have sufficiently adverse impact upon the welfare of the *child.* We held:

> We are dealing here not with an original award of custody, but with a change of custody. They are quite

different situations. They should be different, recognizing the importance of the child's need for continuity. Basically, if a child is doing well in the custodial environment, the custody will not ordinarily be changed.

*Levitt*, at 397, 556 A.2d 1162.

In this case, we are left with no alternative but to reverse the decision of the Chancellor, as it is clear that the Chancellor failed to apply the proper legal standard. We explain.

The Chancellor, in adopting the recommendations of the Master also adopted the Master's conclusions. The ultimate conclusion reached was that a continuation of the joint custodial arrangement was "impractical, due primarily to the action of [Ms. Johnson] and her husband." These actions consisted of Ms. Johnson's failure to communicate with Mr. Domingues with respect to the children, interference on the part of Ms. Johnson and her husband with Mr. Domingues' efforts to communicate with the children and the relocation of Ms. Johnson and the children to Texas. We emphasize the fact that neither the Master nor the Chancellor made the determination that any of Ms. Johnson's actions in respect to Mr. Domingues constituted a change in circumstances *which affected the welfare of the children.* In fact, there was a complete lack of any evidence on that point.

A multitude of witnesses, including the parties, testified at the hearing before the Master. Not a single witness testified that the move to Texas or the mother's remarriage had any adverse effect on the children. The children did not testify, nor were they examined in camera by the Master. No experts testified as to any physical or emotional trauma experienced by the children. No claim was made that Ms. Johnson did not provide more than adequate care for the children. If anything, the evidence overwhelmingly demonstrated that the children were healthy and happy, and that they had a great relationship with both of their parents, perhaps in spite of their parents.

The only circumstance found by the Master to have changed relating to a modification of custody was the fact that Ms. Johnson and the children had moved to San Antonio, Texas. In *Jordan, supra,* we addressed the issue of whether a custodial parent's relocation outside of this State, or to another country for that matter, necessarily constitutes a change in circumstances sufficient to justify a change in custody. In holding that a relocation did not constitute a change in circumstances sufficient to warrant a change in custody, we quoted with approval the case of *Hoyt v. Boyer,* 5 F.L.R. 2135, 2135–36 (N.Y.Fam.Ct., Sullivan County, 1979), *modified,* 77 A.D.2d 685, 429 N.Y.S.2d 792 (1980), where it was stated:

> Relocating as a result of remarriage, employment and the like cannot of itself render a parent to whom custody has been granted unfit and thereby constitute the basis for a modification of custody. See *Matter of Susan "KK" v. Rudolpho "KK",* 39 A.D.2d 792 [331 N.Y.S.2d 523] (3d Dept.1972).

*Jordan* 50 Md.App. at 447, 439 A.2d 26.

Mr. Domingues attempts to distinguish the present case from *Sartoph, supra,* and *Jordan, supra,* on the ground that those cases involved a non-custodial parent's attempt to gain custody of a minor child from the sole custodian, whereas here, the parties are joint custodians. Although he does not directly argue the point, we surmise that he is claiming that the modification standard first enunciated in *Sartoph* and later redefined in *Jordan* should not be applicable to this joint custody situation. We disagree.

We recognized in *Sartoph* that the continuation of a *stable* home environment, with the parent providing that environment, was of paramount importance in the proper development of a child. Accordingly, we held that the stability provided by a parent who was in day to day contact with a child should not be disturbed absent "some strong reason affecting the welfare of the child." *Sartoph,* 31 Md.App. at 66, 354 A.2d 467. We explicitly recognized that

"when all goes well with children, stability, not change, is in their best interests." *Sartoph* at 67, 354 A.2d 467.

The Court of Appeals stated in *Taylor v. Taylor*, 306 Md. 290, 296, 508 A.2d 964 (1986):

> Embraced within the meaning of "custody" are the concepts of "legal" and "physical" custody. Legal custody carries with it the right and obligation to make long range decisions involving education, religious training, discipline, medical care, and other matters of major significance concerning the child's life and welfare. . . .
>
> Physical custody, on the other hand, means the right and obligation to provide a home for the child . . . . [citations omitted, footnote omitted]

Ms. Johnson was the sole physical custodian of the children, although the parties shared legal custody. The only change in circumstances found in the proceeding relating to custody modification was that the children had been taken to Texas. The children had been in Texas several months prior to the close of the hearing before the Master and the issuance of the Master's recommendation. There was absolutely no evidence presented at the hearing that the move to Texas had any adverse effect upon the children. Neither the Master nor the Chancellor made the determination that the move had an adverse effect upon the children. Under such circumstances, we can discern no reason for disturbing the stability provided to the children by Ms. Johnson, absent a determination of a change in circumstances affecting the welfare of the children, or absent *any* evidence in support of such a determination. We hold that the standard we stated in *Sartoph* that the "custody of children should not be disturbed unless there is some strong reason affecting the welfare of the child" also applies to an attempt to transfer custody from a custodian who has primary physical custody of a child in a joint legal custody situation.

Accordingly, we reverse the decision of the Chancellor as to custody, and remand this case to the Chancellor with

directions to consider the extent, if any, that Mr. Domingues' pre-existing visitation rights should be modified.[3]

JUDGMENT REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY APPELLEE.

---

**3.** As Ms. Johnson does not allege error in the Master's finding that an increase in child support was unwarranted, this issue need not be relitigated on remand.