632 A.2d 229

**Patricia J. BAGLEY**

v.

**Warren P. BAGLEY.**

**No. 75, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

Nov. 1, 1993.

Certiorari Denied March 9, 1994.

20

■■■■■■

■■■■■■

Patricia Bagley, Rockville, pro se.

T. Joseph Touhey, Glen Burnie, for appellee.

Argued before BISHOP, ALPERT and DAVIS, JJ.

DAVIS, Judge.

This is an appeal from an order issued by the Circuit Court for Montgomery County adopting the findings and recommendations of a Domestic Relations Master and denying appellant's exceptions to the master's recommendations.

Appellant presents the following questions for our review:

I. Did the trial court err in reviewing the findings and recommendations of the master?

II. Did the trial court err in making its award of increased child support when it failed to maintain the children at a standard of living comparable to the father's?

III. Did the trial court err in making its award of increased child support when it failed to consider the fundamental process established by §§ 12–201 through 204 of the Family Law Article of the Maryland Annotated Code (FL)?

IV. Did the trial court err in awarding attorney's fees in light of the parties' income levels and the circumstances of this case?

## FACTS

Patricia J. Bagley (appellant) and Warren J. Bagley (appellee) were married on June 28, 1975. The Bagleys are the parents of two sons, Steven (born July 7, 1978) and Christopher (born January 6, 1981). The parties were divorced by

the Circuit Court for Anne Arundel County on January 9, 1990. The Judgment of Divorce incorporated the parties' August 23, 1989 Separation and Property Settlement Agreement, which named Mrs. Bagley as sole legal custodian of the children and required Dr. Bagley to pay $2,500 per month in child support. In addition, Dr. Bagley agreed to pay for the children's medical expenses and $1,000 per month in alimony for a minimum of five years.

On October 22, 1991 Mrs. Bagley filed a complaint in the Circuit Court for Montgomery County seeking an increase in child support based upon a substantial increase in Dr. Bagley's income. On March 20, 1992 a hearing on the matter was held before a Domestic Relations Master. During the hearing it was established that Dr. Bagley's annual income was $83,448 in 1989; $235,419 in 1990; and $507,360 in 1991. The master's report concluded that Dr. Bagley had excess monthly income of just under $10,000 after taxes and expenses. The master concluded that Dr. Bagley could "afford any reasonable child support"; based on the parties' disparate income levels, however, Mrs. Bagley reasonably could not be expected to contribute to the support of the children.

Mrs. Bagley claimed monthly income of $1,000 alimony from Dr. Bagley and $389 disability income from the Veterans Administration. Mrs. Bagley's estimated tax burden was $15 per month, leaving income of $1,374 per month.

Mrs. Bagley claimed $4,577 in monthly expenses for Steven and Christopher, based on the following itemization: rent ($733); utilities ($150); telephone ($60); food ($666); clothing ($250); medical/dental ($65);[1] transportation ($594);[2] automobile insurance ($46); other household expenses ($30); re-

---

1. Includes Tylenol, Advil, bandages and first aid, contact solutions, Afrin, Ace bandages, etc., but not expenses that Dr. Bagley claims he pays, according to Mrs. Bagley's financial statement.

2. Includes $480 per month for loan payment on a minivan, gas, oil, maintenance, tags, and miscellaneous expenses associated with vehicle ownership.

creation ($787);[3] incidentals ($301);[4] and periodic payments ($895).[5]

The master found, however, that $1,850 of these expenses were "inappropriate expenses to be attributed to the children," leaving total expenses for Steven and Christopher at $2,722 per month. Inappropriate expenses consisted of legal fees ($500), periodic payments for Mrs. Bagley's debts ($340), new furniture ($130), gifts ($40), vacation and camp ($300), payments for a new car ($480), and medical and dental expenses ($65). The master's four-page report did not offer an explanation for her findings regarding the children's expenses, other than a parenthetical note following the disallowance of the medical and dental expenses, stating that Dr. Bagley is responsible for all medical expenses.

Finally, the master concluded that this case was not appropriate for application of the Maryland Child Support Guidelines because the total income of the parties is far in excess of the maximum considered in the guidelines and because of "other provisions of the parties' Agreement."

The master made the following recommendations:

1. That the defendant pay to the plaintiff child support in the amount of $2,722.00 per month, commencing and

---

**3.** Recreation expenses consisted of vacation ($150); camp (Odyssey of the Mind) ($150); camp (Scouts) ($150); Scouts (non-camp) ($17); school and sports fees ($42); video rentals ($30); recreation (meals out) ($70); supplies (art, games, models) ($60); movies ($22); miscellaneous activities (bikes, go-carts, bowling, etc.) ($20); swim club ($30); allowance ($52); music lessons ($120).

**4.** Incidental expenses consisted of magazines ($15); pet care ($16); toiletries ($30); haircuts ($22); gifts (parties and holiday) ($80); postage ($8); new furniture, including bedroom furniture for Christopher and replacement of family room furniture amortized and financed over three years ($130).

**5.** Consists of home maintenance ($30); lawn mowing (paid to Steven) ($25); legal fees ($500); USAA Visa ($100); HFC ($90); John Burke (Mrs. Bagley's father who apparently lent her money for legal fees) ($50); Citibank ($100).

accounting from November 1, 1991, and payable on the 1st day of each month in advance.

2. That all payments of child support due on or after May 1, 1992, be paid through the Child Support Enforcement Division of the Circuit Court for Montgomery County.

3. That the defendant pay to the plaintiff as a contribution toward her attorney's fees for the issue of child support only the sum of $500.00.

On April 6, 1992 Mrs. Bagley filed a memorandum of exceptions to the master's findings. Mrs. Bagley's exceptions, as rephrased by us, were as follows:

1. *Legal Fees.* The master's finding that $500 per month in legal fees was not appropriate to attribute to the children was incorrect. These fees were incurred by Mrs. Bagley while pursuing increased child support and defending against Dr. Bagley's child custody suit.[6]

2. *Periodic Payments.* The master's finding that periodic payments to USAA Visa, HFC, John Burke, and Citibank (totaling $340) were Mrs. Bagley's debts was incorrect because Mrs. Bagley testified that these expenses were attributed to food, clothing, and activities for the children, and money borrowed for attorney's fees. At oral argument before the chancellor, Mrs. Bagley also associated these expenses with moving from home to home in an attempt to find suitable housing.

3. *Furniture.* The master incorrectly denied expenses for replacement furniture even though Mrs. Bagley testified to the inadequacy of the children's current furniture.

4. *Gifts.* The master incorrectly reduced gift expenses from $80 to $40 per month. These expenses, according to Mrs. Bagley, were fair, reasonable, and uncontradicted during the master's hearing.

---

6. The master's report indicated that Dr. Bagley filed a countercomplaint for custody that was set for trial beginning March 30, 1993.

5. *Vacation/Camp.* The master incorrectly denied expenses for a vacation to visit family members once a year and attend two summer camps. Mrs. Bagley underscores that Dr. Bagley acknowledged during the hearing the importance of the Odyssey of the Mind Camp, whose mission was never clearly put on the record.

6. *New Vehicle.* The master incorrectly denied payment for a minivan that Mrs. Bagley claimed was necessary to transport her sons, their equipment, and friends. Mrs. Bagley admits that her 1990 Corsica is suitable for herself, but she argues that a minivan would improve the lives of her sons.

7. *Medical/Dental Expenses.* Mrs. Bagley argues that this expense was limited to over-the-counter items not contemplated as medical expenses paid by Dr. Bagley.

8. *Attorney's Fees Awarded.* The award of $500 in attorney's fees is inadequate based on Mrs. Bagley's testimony that her costs for the child support hearing would total $4,000; [7] Mrs. Bagley's brief to this Court claims attorney's fees of $5,013.50. Moreover, Mrs. Bagley alleges that Dr. Bagley's attorney caused unreasonable delays that added to her legal expenses.

9. *Improper Influence.* The master was improperly influenced by her irritation with Mrs. Bagley's counsel.

10. *Child Support Guidelines.* The increase of $222 per month in child support payments was inadequate in light of Dr. Bagley's increased income level and contradicted the statutory guidelines codified in FL §§ 12–201 through 204.

Dr. Bagley filed an Answer refuting each of Mrs. Bagley's exceptions. Dr. Bagley asserted that exception 1—*legal fees* were expenses attributable to Mrs. Bagley and may be awarded by the court at a future time but should not be the basis for an increase in child support at the present time. No specific citation was made to the record.

---

7. During the master's hearing, Mrs. Bagley presented an itemized estimate of her legal fees totaling $3,513.50.

In response to exceptions 2—*periodic payments,* 3—*furniture,* 4—*gifts,* 5—*vacation/camp,* and 6—*new vehicle,* Dr. Bagley asserted that these expenses "relate to debts, consumer purchases, or other chattel that this Plaintiff/Counter–Defendant has purchased for herself and seeks now to use as the basis to claim a need for increased child support." No citation was made to the record.

In response to exception 7—*medical/dental expenses,* Dr. Bagley referred to his past record of paying for the children's health care needs, as well as his intention to continue doing so. Dr. Bagley answered exception 8—*attorney's fees awarded* by arguing that a request for $4,000 for counsel fees for a simple child support hearing was patently unreasonable and that the record did not support Mrs. Bagley's claim that delays caused by Dr. Bagley's attorney resulted in increased fees. In response to exception 9—*improper influence,* Dr. Bagley claimed that the record spoke for itself but did not cite any specific portion.

Dr. Bagley responded to exception 10—*child support guidelines* by arguing that the findings of the master properly accounted for the total expenses for each party. Dr. Bagley argued that, although the comparative lifestyles of the parties have changed, all parties were doing "appreciably better" than at the time of the divorce decree.

On June 25, 1992, the trial judge issued a Memorandum and Order adopting the master's findings and recommendations. The Memorandum read in relevant parts:

The Master served her Findings of Fact and Recommendations on March 30, 1992 and recommended an increase in child support payments to $2,722 per month and for the Defendant to pay $500 toward the Plaintiff's attorney's fees.

The Plaintiff filed Exceptions on April 6, 1992, stating that the Master should have proposed child support in the amount of $4,577 per month based on her monthly expenses. The Master determined that $1,855 of the Plaintiff's monthly expenses were inappropriate to be assessed to the children and therefore proposed $2,722 per month in child

support and $500.00 in attorney's fees for the issue of child support.

Pursuant to Maryland Annotated Code, Family Law § 12–204(d), the Court may use its discretion in setting the amount of child support when the combined adjusted actual income of the parties exceeds the child support guidelines. Based on the transcript of the proceedings before the Master, the Plaintiff's Exceptions, the Defendant's Answer to the Exceptions and the parties['] Agreement of August 23, 1989, this Court finds that the Master was not shown to be clearly erroneous in her findings or misapplied the law to her findings. In an exercise of its independent judgment, this Court hereby adopts the Findings and Recommendations of the Master as its own.

## LEGAL ANALYSIS

Mrs. Bagley claims that the trial court erred procedurally and substantively when it adopted the findings and recommendations of the master. Procedurally, Mrs. Bagley claims the court did not apply the proper standard when reviewing the master's findings in light of her exceptions. Substantively, she contends that the court reached an improper result with respect to the amount of child support and the amount of attorney's fees, even if the proper standard of review was followed. We first address Mrs. Bagley's procedural claims.

## I

Mrs. Bagley contends that the Court of Appeals created a mandate in *Domingues v. Johnson*, 323 Md. 486, 593 A.2d 1133 (1991), requiring the trial court to consider each exception presented by the plaintiff for consideration and thereafter to make a specific finding regarding each exception. The chancellor erred in this case, according to Mrs. Bagley, because he adopted the master's findings and recommendations without stating in an oral or written opinion how he resolved her exceptions. The chancellor's express statement that "independent judgment was exercised" was insufficient to meet

the *Domingues* standard, she argues. Mrs. Bagley draws no distinction between exceptions alleging erroneous fact-finding and allegedly improper conclusions of law made by the chancellor. Dr. Bagley, on the other hand, argues that *Domingues* mandates only that the trial court independently evaluate the record and not merely "automatically accept" the master's findings. Dr. Bagley appears to deny that *Domingues* would ever require the chancellor to make specific findings of fact on the record. Neither party correctly understands *Domingues*.

The dispute in *Domingues* arose after mother filed a petition for modification of an existing divorce decree to modify the father's visitation schedule to accommodate her projected relocation and to increase the father's obligation for child support. The father answered and filed a motion seeking sole custody of the children. An extensive hearing was held before a Domestic Relations Master. After a five-day hearing, the master filed an 84–page report finding a substantial change in circumstances since the divorce decree and recommending that primary custody be given to father. Mother filed exceptions with the circuit court, contending that "many of the facts found by the master have no foundation in the record." *Id.* at 496, 593 A.2d 1133. The chancellor heard arguments of counsel regarding the exceptions and subsequently entered an order adopting the master's recommendations. This Court heard mother's appeal and reversed the chancellor, concluding that he erred when he considered the best interests of the child instead of determining whether there was sufficient evidence of a change in circumstances affecting the welfare of the child. *See Johnson v. Domingues*, 82 Md.App. 128, 134, 570 A.2d 369 (1990), *rev'd*, 323 Md. 486, 490, 593 A.2d 1133 (1991).

The Court of Appeals ordered a stay of that order and granted father's petition for certiorari. The Court of Appeals found that the chancellor did not err when he considered the best interests of the child, but that the chancellor did err when he incorrectly "accepted the recommendations of the master upon a finding that those recommendations were not clearly erroneous, instead of subjecting the master's fact-finding to a

clearly erroneous test and then exercising his independent judgment concerning the proper conclusion to be reached upon those facts." *Domingues,* 323 Md. at 490, 593 A.2d 1133.

■ The Court delineated the proper interaction between a master and a chancellor in cases where a party has filed exceptions, contending that the master's fact-finding is not supported by the record. As a general rule, a master's findings of fact are given deference under the clearly erroneous rule. *Id.* at 496, 593 A.2d 1133. Where a party argues that facts found by the master have no foundation in the record, however, deference under the clearly erroneous rule recedes. *Id.* The chancellor must carefully consider the allegations and decide each such question. "The chancellor should, in an oral or written opinion, state how he resolved those challenges. Having determined which facts are properly before him, and utilizing accepted principles of law, the chancellor must exercise independent judgment to determine the proper result." *Id.*

This rule was clarified in the subsequent case of *Kirchner v. Caughey,* 326 Md. 567, 606 A.2d 257 (1992). The *Kirchner* Court stated that "[w]e now make clear that the written or oral opinion of the chancellor should address as well the issues relating to the conclusions to be drawn from the facts found." *Id.* at 572, 606 A.2d 257. The Court reasoned that Maryland Rule 2–522(a),[8] which the Court found "applies to a final judgment in every non-jury action ...," requires no less than "consideration of the relevant issues and the reasoning supporting the chancellor's independent decisions on those issues...." *Id.* at 573, 606 A.2d 257.

The Court was cognizant of the "substantial" burden carried by the chancellor. In this vein, the Court stated:

---

**8.** Maryland Rule 2–522(a) provides:

> In a contested court trial, the judge, before or at the time judgment is entered, shall dictate into the record or prepare and file in the action a brief statement of the reasons for the decision and the basis of determining any damages.

The necessity that the chancellor rule on challenges to findings of fact which may involve testimony spread throughout hundreds of pages of transcript, the difficulty of making a decision as to the best interest of a child without personally observing the witnesses, and the critical nature of the decision that must be made, as well as the wide discretion that is necessarily afforded that decision by the appellate courts, all speak to the care and attention that must be given the case by a chancellor.

*Domingues*, 323 Md. at 497, 593 A.2d 1133.

The chancellor's burden is lessened to the extent that the opposing party provides an adequate reply to the moving party's exceptions. The *Domingues* Court noted that

the chancellor should not be required to conduct an unassisted search of the entire record for testimony that would support each challenged finding. To the extent that the master's report does not provide reference to the underlying testimony upon which a finding is based, the party responding to an exception of this type should specify those portions of the record upon which he or she relies to demonstrate an adequate foundation for that finding.

*Id.* at 496, 593 A.2d 1133.

■ Dr. Bagley's Answer to Mrs. Bagley's exceptions does not adequately meet this standard because it makes no more than a few oblique references to the record for support. While this could not provide a basis for excusing a chancellor's improper review of a master's challenged fact-finding, the inadequacy of Dr. Bagley's Answer certainly made proper disposition of this case more difficult for all parties involved.

■ An important caveat to the *Domingues–Kirchner* standard, overlooked by Mrs. Bagley, is that it only applies to exceptions that allege that a master's fact-finding is unsupported by the record. *Kirchner*, 326 Md. at 572, 606 A.2d 257; *Domingues*, 323 Md. at 496, 593 A.2d 1133; *Noffsinger v. Noffsinger*, 95 Md.App. 265, 274 n. 1, 274–75, 620 A.2d 415 (1993). Appellate discipline mandates that, absent a clear abuse of discretion, a chancellor's decision that is grounded in

law and based upon facts that are not clearly erroneous will not be disturbed. *Domingues,* 323 Md. at 492 n. 2, 593 A.2d 1133, citing *Ross v. Hoffman,* 280 Md. 172, 186, 372 A.2d 582 (1977); *Davis v. Davis,* 280 Md. 119, 124–25, 372 A.2d 231, *cert. denied,* 434 U.S. 939, 98 S.Ct. 430, 54 L.Ed.2d 299 (1977). Where the findings are supported by evidence and therefore not clearly erroneous, the trial judge is left with discretion to determine the proper disposition of the case. *Noffsinger,* 95 Md.App. at 275, 620 A.2d 415; *Wenger v. Wenger,* 42 Md.App. 596, 602, 402 A.2d 94 (1979). In *Wenger,* we noted that a "given set of facts does not lead mechanically to a single, automatic disposition but may support a range of discretionary dispositions." *Id.* at 602, 402 A.2d 94.

In the case *sub judice,* the chancellor's order suggests that he did not examine Mrs. Bagley's exceptions to determine which, if any, alleged clearly erroneous fact-finding by the master. A review of Mrs. Bagley's exceptions reveals that only exceptions numbered 1—*legal fees,* 2—*periodic payments,* 3—*furniture,* 4—*gifts,* 5—*vacation/camp,* and 6—*new vehicle* allege erroneous fact-finding by the master. The chancellor was obligated under the *Domingues–Kirchner* standard to state, in an oral or written opinion, how he resolved the factual challenges reflecting "consideration of the relevant issues and the reasoning supporting the chancellor's independent decisions on those issues...." *Kirchner,* 326 Md. at 573, 606 A.2d 257. In the case *sub judice,* exceptions 1, 2, 3, 4, 5, and 6 all arise from the chancellor's conclusion that these expenses could not be factually assessed to the children. This is the very same conclusion Mrs. Bagley challenged when it was made by the master. The chancellor did not make any record of how he resolved Mrs. Bagley's challenge that the record supports the opposite conclusion, *i.e.,* that these expenses are assessable to the children. Therefore, this case must be remanded to the circuit court with regard to Mrs. Bagley's exceptions listed in this opinion as numbers 1, 2, 3, 4, 5, and 6.

For the guidance of the trial court upon remand, we provide a significant analysis of how children's expenses should be determined by the chancellor as well as the central role that the expenses play in a determination of child support awards for incomes above the schedule. For organizational purposes, we reserve this discussion for sections II and III where we speak to the sufficiency of the ultimate amount awarded.

■ Exceptions numbered 7—*medical/dental expenses,* 8—*attorney's fees awarded,* 9—*undue influence,* and 10—*child support* do not allege erroneous fact-finding. Therefore, the *Domingues–Kirchner* standard does not apply. *Kirchner,* 326 Md. at 572, 606 A.2d 257; *Domingues,* 323 Md. at 496, 593 A.2d 1133; *Noffsinger,* 95 Md.App. at 274 n. 1, 620 A.2d 415. Mrs. Bagley's arguments that the trial court erred when it did not resolve these exceptions on the record is without merit.

■ Although the chancellor made no specific finding regarding exception 7—*medical/dental expenses,* his adoption of the master's report leads to the conclusion that he denied this expense because Dr. Bagley was already contractually obligated to pay those expenses under the parties' Separation Agreement. The Separation Agreement states that "husband agrees to be individually responsible for all uninsured medical costs for the minor children. In conjunction therewith, the Wife shall remit to Husband proof of all costs for medical and/or prescription expenses and verification of any claim to right or reimbursement." Dr. Bagley's Answer to Mrs. Bagley's Exceptions does not deny his obligation to pay these expenses under the Separation Agreement. Rather, the dispute is whether the expenses should be paid in a monthly allowance or on an as-needed basis. Interpreting the Separation Agreement is a question of contract law. *Mendelson v. Mendelson,* 75 Md.App. 486, 501, 541 A.2d 1331 (1988). Although Mrs. Bagley has not directly challenged the chancellor's legal interpretation of the parties' Separation Agreement, for completeness we shall explain why her challenge would fail.

Appellate review of a question of law does not trigger the clearly erroneous rule. *Wenger,* 42 Md.App. at 602, 402 A.2d 94. Proper appellate discipline dictates that, when the appellate court views the ultimate conclusion of the chancellor founded upon sound legal principles and based upon factual findings that are not clearly erroneous, the chancellor's decision should be disturbed only if there has been a clear abuse of discretion. *Domingues,* 323 Md. at 492 n. 2, 593 A.2d 1133 (citing cases); *Noffsinger,* 95 Md.App. at 273, 620 A.2d 415.

In the present case, the chancellor's ultimate conclusion regarding medical expenses is founded upon sound legal principles and facts that are not clearly erroneous. Determination that Dr. Bagley was responsible, independent of child support payments, for the children's medical and dental expenses is soundly grounded in contract law. The Bagleys' Separation and Property Settlement Agreement provides in sections 4 and 7 that Dr. Bagley is responsible for uninsured medical costs for the minor children, upon proof of all costs. This agreement can reasonably be construed by the chancellor to include the incidental medical and dental expenses claimed by Mrs. Bagley. *See, e.g., General Motors Acceptance v. Daniels,* 303 Md. 254, 261, 492 A.2d 1306 (1985) (the objective rule of contract interpretation requires the court to look at what a reasonable person would have meant by the contract language, not what the parties subjectively intended it to mean). In addition, the chancellor's findings were not based on clearly erroneous facts. The parties' separation agreement was in the record. Further, Dr. Bagley's Answer to Mrs. Bagley's exceptions states in paragraph 8 that "[i]t is not without reason that the [m]aster declined any item of claimed medical expense for the children viewing the faithful compliance by the Defendant with his agreement to undertake all medical expenses for the children in the future." Based on this review, we cannot conclude that the chancellor abused his discretion when he denied child support payments that included the sixty-five dollar medical expense claimed by Mrs. Bagley.

With regard to exception 9—*undue influence,* Mrs. Bagley contends that the trial judge erred when he did not make a specific finding regarding her allegation that the master was unduly influenced by her irritation with Mrs. Bagley's attorney. This exception does not raise a specific reviewable challenge to the master's fact-finding. A broad generalization that the master may have been partial in reaching her conclusions must be presented in the form of specific exceptions to the master's fact-finding.

Exception 8—*attorney's fees awarded* does not challenge fact-finding but rather an ultimate conclusion of law based upon findings of fact. Likewise, exception 10—*guidelines* challenges the proper application of the law, here the statutory guidelines, but not erroneous fact-finding. Consequently, it is not subject to the *Domingues–Kirchner* standard. Nonetheless, they will be reviewed as substantive claims made by Mrs. Bagley in her brief.

## II and III

Mrs. Bagley's second claim, framed as whether the trial court erred in making its award of increased child support when it failed to maintain the children at a standard of living comparable to the father's, and her third claim, framed as whether the trial court erred when it failed to consider and apply the guidelines established in FL §§ 12–201 through 204 (the "guidelines"), are treated together. Each claim essentially asks this Court not only to determine if the guidelines were applied but if the chancellor's ultimate award was correct. If the guidelines were applied correctly, the award will maintain the children at the standard of living they would have enjoyed absent a divorce. At this juncture, we cannot find that the child support award ordered by the chancellor is consistent with the principles underpinning the guidelines. For this reason, we vacate the support award and remand for the chancellor to make an order consistent with the guidance we provide herein.

In 1989 the Maryland General Assembly overhauled the State's child support legislation to comply with new federal

law and regulations. *See generally* 42 U.S.C. §§ 651–67 (1982 & 1984 Supp. II); 45 C.F.R. § 302.56 (1989). The federal law required states to create support guidelines "based on specific descriptive and numeric criteria...." *Voishan v. Palma,* 327 Md. 318, 322, 609 A.2d 319 (1992). The guidelines were intended to fulfill three federal goals: "(1) to remedy a shortfall in the level of awards that do not reflect the actual costs of raising children, (2) to improve the consistency, and therefore the equity, of child support awards, and (3) to improve the efficiency of court processes for adjudicating child support...." *Id.* (internal quotes omitted).

To fulfill these goals, the General Assembly chose to create guidelines based on the Income Shares Model. This model rests upon the principle that

> a child should receive the same proportion of parental income, and thereby enjoy the same standard of living, he or she would have experienced had the child's parents remained together. Accordingly, the model establishes child support obligations based on estimates of the percentage of income that parents in an intact household typically spend on their children.

*Id.* at 322–23, 609 A.2d 319 (citations omitted).

The Legislature clearly mandated that, in situations where the combined adjusted monthly income exceeds the $10,000 limit of the guidelines schedule, the trial judge is granted discretion in setting the amount of child support. FL § 12–204(d). The chancellor's discretion was not limited by a maximum amount in the schedule, a theory of extrapolation based on percentages found in the schedule, or a maximum percentage of combined monthly income. *Voishan,* 327 Md. at 326–28, 609 A.2d 319. Several groups appealed to the General Assembly to provide greater guidance for the courts. Suggestions included establishing a fixed percentage of income for levels above the schedule, extending the table, or creating additional guidelines. Notwithstanding these pleas, the Legislature left determination of awards above the schedule to the

chancellor. The Court found that the General Assembly implicitly understood that

> at very high income levels, the percentage of income expended on children may not necessarily continue to decline or even remain constant because of the multitude of different options for income expenditure available to the affluent. The legislative judgment was that at such high income levels judicial discretion is better suited than a fixed formula to implement the guidelines' underlying principle that a child's standard of living should be altered as little as possible by the dissolution of the family.

*Id.* at 328, 609 A.2d 319.

In *Voishan,* the Court emphasized that, although "the legislature specifically rejected the request for more explicit formulae for incomes above the schedule, the general principles from which the schedule was derived should not be ignored." *Id.* at 328, 609 A.2d 319. The Court's careful review of the legislative intent and preguideline cases emphasized several significant considerations that circumscribe and guide the trial judge's discretion. These considerations include:

1) the purpose of the Income Shares Model underlying the guidelines, *i.e.,* maintain the children at the same standard of living they would have enjoyed absent the parties' divorce;

2) the financial circumstances of each party;

3) each party's station in life;

4) the age and physical condition of the parties;

5) the costs of educating the child;

6) the need for consistency of support awards;

7) the maximum in the schedule is the minimum for combined incomes above the schedule;

8) the results of extrapolation from the schedule.

On review, we must determine whether the trial judge exercised his discretion within these boundaries. In the case *sub judice,* we cannot find that the trial judge exercised his discretion within these boundaries. The issue of reasonable

expenses is being remanded for a finding on the record. If the chancellor improperly denied the challenged expenses, then he would accordingly need to raise the support award. In addition, the record does not reflect consideration of the principles underlying the guidelines. The chancellor adopted the master's finding that certain items were "inappropriate expenses to be attributed to the children." Although somewhat ambiguous, the statement indicates that the excluded expenses, including summer camps, vacations, recreation-oriented vehicles, adequate furniture, and social/entertainment expenses would not be common to children of a family with Dr. Bagley's income level. As a point of reference, the record contains Dr. Bagley's financial statement. Dr. Bagley estimated his monthly expenses at $12,717, based on the following itemization: house payment ($576); utilities ($130); telephone ($200); food ($1,000); clothing ($300); medical/dental ($50); transportation ($300); life, health, auto, and other insurance premiums ($587); recreation ($275); incidentals ($600); and periodic payments ($8,699).[9]

The Bagley children are entitled to every expense reasonable for a child of someone with Dr. Bagley's affluence. *Cole v. Cole*, 44 Md.App. 435, 446, 409 A.2d 734 (1979). On remand, the chancellor must determine if a child of a married couple living together as a family based on Dr. Bagley's income and standard of living would have the benefits of attending summer camp, enjoying access to a recreational vehicle, receiving generous gifts, possessing adequate and modern furniture, vacationing with relatives, etc. The chancellor should be cognizant that a child's needs, like an adult's, increase proportionally with their opportunity to participate in educational, cultural, and recreational activities. Moreover, each opportunity builds upon itself creating new opportunities. The end result, theoretically, is a child whose opportunities to realize

---

9. Periodic payments are comprised of Farm Credit ($958); auto payment # 1 ($256); auto payment # 2 ($572); student loan ($38); equipment loan ($275); credit cards ($2,000); boys' medical bills ($650); alimony ($1,000); child support ($2,500); and tutoring for boys ($450).

his/her potential have not been diminished by divorce although the parent may incur greater expenses.

Finally, we take a moment to appreciate the grave responsibility the Legislature has entrusted to the chancellor. The legislative history and case law do not obscure the fact that the Legislature left the task of awards above the guidelines to the chancellor precisely because such awards defied any simple mathematical solution. Where the social scientists have failed to provide an adequate solution, the trial judge is asked to step into the breach. As difficult as this task is, we do not depart from the Legislature's conclusion that the trial judge is properly entrusted to meet this great challenge. Moreover, we find that a careful examination of the statute and case law provides the trial judge sufficient guidance for rendering an appropriate decision.

## IV

Mrs. Bagley contends that the court's award of $500 in counsel fees is grossly inadequate given the circumstances of this case. In particular, Mrs. Bagley argues that the counsel fees were incurred to benefit her children and that the children did benefit by an order increasing Dr. Bagley's child support obligations. Mrs. Bagley seeks full reimbursement for legal expenses that she alleges total $5,013.50. Dr. Bagley contends, however, that the court's award of $500 in counsel fees was a just and proper amount within the chancellor's discretion.

The chancellor adopted the master's recommendation awarding Mrs. Bagley counsel fees of $500 without stating his reasons or providing an analysis of FL § 12–103, the governing statute. Although a chancellor is vested with a high degree of discretion in making an award of attorney's fees, *Lieberman v. Lieberman,* 81 Md.App. 575, 600, 568 A.2d 1157 (1990), citing *Lapides v. Lapides,* 50 Md.App. 248, 251, 437 A.2d 251 (1981), the trial judge must consider and balance the required considerations as articulated by the Legislature in § 12–103, which provides in pertinent part:

(a) *In general.* The court may award to either party the costs and counsel fees that are just and proper under all the circumstances in any case in which a person:

(1) applies for a decree or modification of a decree concerning the custody, support, or visitation of a child of the parties;

. . . .

(b) *Required considerations.* Before a court may award costs and counsel fees under this section, the court shall consider:

(1) the financial status of each party;

(2) the needs of each party; and

(3) whether there was substantial justification for bringing or defending the proceeding.

The first factor, financial status, weighs in favor of Mrs. Bagley. Her illness has prevented her from maintaining gainful employment, and her income derived from alimony and disability payments pales in comparison to Dr. Bagley's income. In addition, the master concluded it would be unreasonable to expect Mrs. Bagley to contribute to the children's support. The second factor, needs of each party, does not clearly weigh in favor of either party. We are mindful, however, of Mrs. Bagley's illness, her responsibility of caring for two children, and Dr. Bagley's obvious greater ability to absorb these expenses. The final factor, whether there was a substantial justification for bringing the proceeding, weighs in favor of Mrs. Bagley because the court acknowledged the merits of her cause of action when it ordered an increase of child support. Moreover, there was no evidence that Mrs. Bagley brought this action for any reason other than to benefit the children.

 Based on the chancellor's terse Memorandum and Order, it is unclear whether the chancellor's award of less than 20 percent of counsel fees was arbitrary in the absence of a finding that the fee was excessive or not commensurate with the work performed. In view of the circumstances of the parties, in particular Mrs. Bagley's inability to work and her

minimal income, it is evident that burdening Mrs. Bagley with the remaining costs will have the effect of reducing resources available to the children. *See id.,* 81 Md.App. at 601, 568 A.2d 1157. We remand for the chancellor to consider and articulate his basis for the amount awarded. The chancellor must look at (1) whether Mrs. Bagley's claim for attorney's fees of $5,013.50 is supported by testimony or the record, (2) whether the work was reasonably necessary, (3) whether the fee was reasonable in light of the work performed, and (4) what is a fair and reasonable distribution of the fees between the parties. *Id.* at 601–02, 568 A.2d 1157. Absent a finding that the fees were unreasonable, such fees found to be in furtherance of restoring the children to the circumstances they would have enjoyed but for the divorce should be granted where substantiated by Mrs. Bagley.

**ORDER OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY OVERRULING EXCEPTIONS 1, 2, 3, 4, 5, AND 6 TO THE FINDINGS AND RECOMMENDATIONS OF THE DOMESTIC RELATIONS MASTER VACATED; ORDER OF THE CIRCUIT COURT OVERRULING EXCEPTIONS NUMBERED 7, 8, 9, AND 10 AFFIRMED; CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**IN AN ACT OF DISCRETION, THIS COURT ORDERS COSTS TO BE PAID BY APPELLEE.**