¶ 20. I agree with the majority that the chancellor correctly denied Bradley's request for punitive damages. I likewise concur with the majority's decision to reverse Moulds's criminal contempt conviction and sentence. While I also agree that the chancellor's award of child support should be remanded for calculation based upon an accurate accounting of Moulds's adjusted gross income, I write separately to address the underlying standards our trial courts utilize when determining what constitutes an adequate award of child support.
¶ 21. Our Legislature has spoken on the issue of child support via Miss. Code Ann. § 43-19-101(1) (2000) wherein enumerated guidelines establish a rebuttable presumption in all judicial or administrative proceedings that one child is entitled to fourteen percent of the father's adjusted gross income. The guidelines provided in subsection (1) apply unless the judicial or administrative body awarding or modifying the child support award makes a written or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case as determined under the criteria specified in Miss. Code Ann. § 43-19-103.[5] *Page 228 
¶ 22. The statute reminds us that the amount of "adjusted gross income" as that term is used in § 43-19-101(1) is calculated by including gross income from all potential sources[6] that may reasonably be expected to be available to the absent parent. Miss. Code Ann. § 43-19-101(3) (2000). Further, when the adjusted gross income of the absent parent is more than $50,000, as is the case here, the court must make a written finding on the record as to whether or not the application of the guidelines established in this section is reasonable.Id.
¶ 23. Moulds's situation is rather unique, comparatively speaking. Most child support cases center on the non-custodial parent's inability, often coupled with an unwillingness, to pay adequate child support. Finally, after all these many years, Moulds testified that he is ready to accept responsibility for his children and set an example for them by paying all child support currently in arrears. He further testified that he wanted to provide them with opportunities and material possessions that he did not have as a child. I believe this is the hope of every parent for their child. Since Moulds is willing and certainly financially able to offer this support, we must look to the peculiarities of the situation to determine what amount would be reasonable under his circumstances.
¶ 24. What constitutes "reasonable needs" for a child varies with the circumstances of the parties involved. The duty to support a child covers more than the mere necessities of life if the parent can afford to pay more. The majority noted that even in cases in which a parent has extraordinary wealth, the essential purpose is to support the child. I agree. However, this raises the question of "support to what extent?" Often, alimony is awarded to a spouse in a divorce action. Alimony should be reasonable in amount and commensurate with the wife's accustomed standard of living, considering the ability of the husband to pay.Brendel v. Brendel, 566 So.2d 1269, 1272-73 (Miss. 1990). Among the familiar factors set out for consideration to determine the amount of alimony in Brabham v. Brabham, 226 Miss. 165, 84 So.2d 147 (1955) are the health of the husband and his earning capacity, the entire sources of income of both parties, the reasonable needs of the child. Brabham, 226 Miss. at 176, 84 So.2d at 153. Additionally, Miss. Code Ann. § 93-5-23
(Supp. 2000)[7] provides that each *Page 229 
parent must provide support and maintenance relative to their financial ability.
¶ 25. Obviously, there was no marriage in the case sub judice, and Randy's status as an illegitimate child is uncontested. However, the principle remains the same. After an adjudication of paternity, an illegitimate child's legal relationship to the father with regard to financial support is no different than that of a legitimate child born to a marriage that ended in divorce. It flies in the face of good sense to base alimony, in part, on the spouse's ability to pay and not give the same consideration to child support. When child support is given in connection with alimony, the child receives the benefit of living in a style in which the recipient spouse is accustomed in addition to the amount paid specifically for the benefit of the child. By not extending the same consideration to illegitimate children, we effectuate a double standard in which the child suffers through no fault of their own. I believe that when awarding child support, the chancellor should award an amount sufficient to maintain the child in a lifestyle which the non-custodial parent is capable of supporting.
¶ 26. This theory is well founded law in numerous jurisdictions. The standard of living to which a child is entitled should be measured in terms of the standard of living attainable by the income available to the parents rather than by evidence of the manner in which the parents' income is expended and the parents' resulting lifestyle. White v. Marciano,235 Cal.Rptr. 779, 782 (Cal.Ct.App. 1987). Children are not expected to live at a minimal level of comfort while one or more parents enjoy a luxurious lifestyle; they are entitled to a part of the bounty of one parent's good fortune. In re Marriage of Nimmo, 891 P.2d 1002, 1007 (Colo. 1995). The trial court should not limit the amount of child support to the child's `shown needs,' because a child is not expected to live at a minimal level of comfort while the non-custodial parent is living a life of luxury. People ex rel. Graham v. Adams, 608 N.E.2d 614, 616 (Ill.App.Ct. 1993). The fact that the mother was able to meet the basic needs of the children on less support than she requested does not mean that the children do not have needs that should be addressed by a further increase in child support because the term "need" refers to the general standard of living commensurate with income of parents. Harrisv. Harris, 714 A.2d 626, 633 (Vt. 1998). When a court is required to exercise discretion in setting a child support obligation, the court must consider the reasonable needs of the child and the obligor's ability topay. Havens v. Henning, 418 N.W.2d 311, 312 (S.D. 1988). See also Galbisv. Nadal, 626 A.2d 26, 31 (D.C. 1993) (holding that a child's needs should not be interpreted so narrowly as to deprive child of quality of life enjoyed by non-custodial parent); Bagley v. Bagley, 632 A.2d 229, 239 (Md.Ct.Spec.App. 1993) (holding that children are entitled to every expense reasonable for a child of affluent parent). These cases reflect the same reasoning as is found in Miss. Code Ann. § 43-19-103, which also requires consideration of the total available assets of the obligor.
¶ 27. The majority noted that Moulds's gross monthly salary at the time of trial was approximately $108,600. Since adjudication of this matter, it has been widely reported in the national press that Moulds signed a new six-year contract with the Buffalo Bills totaling just under $60 million, including a $12.5 million signing bonus. Using, for example, a conservative estimate of $40 million over six years will produce a monthly salary of almost *Page 230 
$560,000 payable to Moulds. This amount is exclusive of any endorsement contracts, public appearances, and other investments that he may have, all of which should be considered per the language of Miss. Code Ann. § 43-19-101(3) (2000).
¶ 28. On remand, I would allow evidence to be presented concerning changes in the financial conditions of the involved parties to calculate new support payments for Randy. The flexible nature of Moulds's career and our interest in judicial economy warrant that Moulds's present financial condition be considered by the chancellor, thus preventing the need for Bradley to file an immediate petition for modification of child support.
¶ 29. The law presumes that Randy is entitled to child support in the amount of fourteen percent of Moulds's adjusted gross income. Based solely upon those guidelines, Moulds should have been required to pay approximately $8,800 per month under his previous salary. Even if the chancellor finds special circumstances that require departure from the established guidelines, he should not depart downward in a case like this. This fact is made abundantly clear when it was noted at trial that Moulds spent approximately $1500 per month on clothes and $200 per month on child support to Randy, when he chose to pay it. Under the chancellor's findings, the new $1000 threshold is still only approximately one percent of Moulds's previous income. This is unacceptable.
¶ 30. If Moulds is less than forthcoming with the details of his financial affairs, as was the case at trial, I note that it has been held that "where the extraordinarily high earner resists detailed discovery of his or her financial affairs, the trial court may make such assumptions concerning his or her net disposable income, federal income tax filing status, and deductions from gross income as are least beneficial to the extraordinarily high earner." Johnson v. Superior Court,77 Cal.Rptr.2d 624, 627 (Cal.Ct.App. 1998).
¶ 31. As Albright indicates, the polestar consideration is the best interest of the child. Albright v. Albright, 437 So.2d 1003, 1005 (Miss. 1983). I fail to grasp how denying a child the fruits of his father's success can be said to be in the child's best interest.
MILLS AND EASLEY, JJ., JOIN THIS OPINION.
SMITH, WALLER AND COBB, JJ., JOIN THIS OPINION IN PART.
[5] Miss. Code Ann. § 43-19-103 reads in relevant part:
 The rebuttable presumption as to the justness or appropriateness of an award or modification of a child support award in this state, based upon the guidelines established by Section 43-19-101, may be overcome by a judicial or administrative body awarding or modifying the child support award by making a written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case as determined according to the following criteria:
 (h) Total available assets of the obligee, obligor and the child.
 (i) Any other adjustment which is needed to achieve an equitable result which may include, but not be limited to, a reasonable and necessary existing expense or debt.
[6] These potential sources of income include, but are not limited to, the following: wages and salary income; income from self employment; income from commissions; income from investments, including dividends, interest income and income on any trust account or property; annuity and retirement benefits, including an individual retirement account (IRA); any other payments made by any person, private entity, federal or state government or any unit of local government; any income earned from an interest in or from inherited property; any other form of earned income.
[7] Miss. Code Ann. § 93-5-23 reads in pertinent part:
 When a divorce shall be decreed from the bonds of matrimony, the court may, in its discretion, having regard to the circumstances of the parties and the nature of the case, as may seem equitable and just, make all orders touching the care, custody and maintenance of the children of the marriage. However, where proof shows that both parents have separate incomes or estates, the court may require that each parent contribute to the support and maintenance of the children of the marriage in proportion to the relative financial ability of each. (emphasis added).